DENNIS K. BURKE
United States Attorney
District of Arizona

KEVIN M. RAPP
Assistant U.S. Attorney
Arizona State Bar No. 014249
kevin.rapp@usdoj.gov
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>     v.<br><br>Cipriano Ionutescu,<br><br>             Defendant. | CR08-00612-07-PHX-NVW<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S IONUTESCU'S MOTION FOR NEW TRIAL PURSUANT TO RULE 33** |

Plaintiff United States of America hereby submits its response to Defendant's Motion for New Trial. This motion is based on the attached memorandum of points and authorities, the files and records of this case, and on such further argument and evidence as may be adduced at any hearing on the motion.

Respectfully submitted this 1st day of December, 2009.

DENNIS K. BURKE
United States Attorney
District of Arizona

s/ Kevin M. Rapp

KEVIN M. RAPP
Assistant U.S. Attorney

# MEMORANDUM OF POINTS AND AUTHORITIES

**I. Background**

The Court held a jury trial in this case from October 6 to October 20, 2009. The government alleged that Defendant joined a scheme to recruit straw buyers and submit uniform loan applications containing false information in order to qualify the straw buyers for loans to obtain mortgage financing on properties. The government further alleged that the conspirators concealed from the lenders that they were receiving cash back at closing. The court submitted the case following charges to the jury for deliberation. Prior to the return of the guilty verdict co-defendants Samuel and Georgiana Dobos entered guilty pleas. The jury found Defendant guilty on counts 1, 5, 7, 15 and 18. (Doc. # 441)The court has taken under advisement the defendant's motion for judgment of aquital as to counts 1, 7, 15 and 18. (Doc. # 464) The government has since dismissed counts 15 and 18. The defendant has challenged the sufficiency of the evidence with respect to the remaining counts and has requested a new trial pursuant to Federal Rule Crim. P. 33. Lastly, defendant has recently filed a supplemental motion to direct a judgement of acquittal. (See Doc. # 486) [1]

**II. Law**

Rule 33 of the Federal Rules of Criminal Procedure provides: " Upon the defendant's motion, the court may vacate any judgement and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33(a). A motion for a new trial should be granted "only in exceptional cases," in which "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *United Sates v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981); *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). When reviewing the sufficiency of the

---

[1] It is not the government's intent to respond to Defendant's supplemental motion for Judgement of Acquittal Pursuant to Rule 29. The government submits on previous arguments made during and following trial.

evidence, the court must determine whether the jury could rationally have reached a verdict of guilty beyond a reasonable doubt based on the evidence adduced at trial. *Powell*, 469 U.S. at 67. A district court "may weigh the evidence and in so doing evaluate for itself the credibility of witnesses." *Alston,* 974 F.2d at 1211 (quoting *Lincoln*, 630 F.2d at 1319) The review of evidence is independent of the jury's determination that evidence on another count was insufficient. *Powell,* 469 U.S. at 67.

**III. Argument**

Defendant focuses his argument on two reasons for a new trial. First, he argues that the admission of video-audio of a meeting between defendant and an undercover agent was erroneously admitted, arguing that the tapes had little probative value and carried a great deal of prejudice. Second, a new trial is also required because there was late disclosure of potential *Brady* impeachment material as it relates to witness Brandon Azadegan ("Azadegan"). Defendant acknowledges that he cannot make a specific claim that there was a *Brady* violation but merely speculates that the jail calls *may* contain impeachment material. In either case, he has failed to present an exceptional case for the court to grant a new trial.

**A. Government's Case**

At trial, the government relied on two witnesses that implicated defendant in the charged conspiracy. Catherine Zebarth ("Zebarth"), a co-defendant and loan officer, testified about her participation in the mortgage fraud scheme. Zebarth was introduced to defendant through Azadegan. (RT 10/7/09 22.)  During 2005-2006 she started handling construction loans for defendant. (RT 10/7/09 28.) Throughout the trial there was evidence regarding the assignment of funds or cash back to a third party. Zebarth testified that she became aware that defendant was engaged in an assignment of funds from discussions with both Azadegan and defendant. (RT 10/7/08 28-29.)

In late 2006, she received a referral from co-defendant Georgiana Dobos to originate loans for Gheorge Babeti and Cosmina Bunea. (RT 10/ 7/09 61.) Although Zebarth never met

3

Babeti she did, on one occasion, meet Bunea. (RT 10/7/09 61) Importantly, sometime after the loans closed for both Bunea and Babeti, Zebarth had a discussion with defendant where he advised her that the loans (for Babeti and Bunea) were starting to foreclose. (RT 10/7/09 67.)

Zebarth also had other discussions with defendant about the use of straw buyers. Specifically, they discussed the loans for buyers Ciprian Zarba and Christian Lazar. (RT 10/7/09 70-71.) Defendant advised Zebarth that he was no longer going to make the payments for Lazar and Zarba because the houses "weren't worth wasting money on." (*Id.* at 71.) Shortly thereafter, Zebarth stopped doing loans for straw buyers referred by Azadegan and Ionutescu. (*Id.* at 72.)

At trial, Azadegan also testified about his relationship with defendant and involvement in the mortgage fraud scheme. Azadegan met defendant in October 2004. Shortly thereafter, Azadegan and defendant became partners in real estate purchases. (RT 10/9/09 12-13.) Generally they became involved in a business of buying homes, remodeling them with the hopes of selling them for a profit. Azadegan purchased homes in his mother's name and defendant shared in the proceeds of those homes. (RT 10/9/09 15,18.) Indeed, defendant kept an accounting of the expenses paid by Azadegan (*Id.*; Ex. 182.) In total Azadegan partnered with defendant in the purchase of ten or eleven houses. (RT 10/9/09 21.)

Azadegan further testified that he had difficulty in selling four of his houses. Those houses were known as Thunderbird, Sobrante, Monterey and Sweetwater. (RT 10/9/09 22-23.) Azadegan testified that the debt service on these properties as being approximately $35,000 per month. (RT 10/9/09 23.) During this time period, he discussed with defendant selling these houses to someone else. (*Id.*) Defendant then introduced Azadegan to Samuel and Georgiana Dobos for the purpose of selling the houses. (RT 10/9/09 25 and 72.)

In addition to witnesses Zebarth and Azadegan, the government presented evidence that defendant falsely verified the rent for a property know as Fallen Leaf.[2] The rent verification in question was admitted as exhibit 126. It contained defendant's signature, the name and fax of

---

[2] The Fallen Leaf property corresponds to count 5, charging defendant with wire fraud.

his company CBI builders and referenced two properties that defendant owned. Defendant falsely verifying rents was corroborated by Azadegan when he testifies to the following:

> Q. And when you verified the rent, did you do that–were you providing false verifications?
>
> A. That is correct.
>
> Q. During the time period that you were working with Mr. Ionutescu, did you learn whether or not he was doing that as well?
>
> A. No. He had done some on several occasions. That is correct. (RT 10/9/09 34.)

Additionally, Azadegan identifies defendant's signature and his company on the rent verifications submitted on Bunea's behalf. (RT 10/9/09 36.) He further clarifies that the house referenced in the verification of rent was owned by defendant and not habitable. (RT 10/9/09 45.)

**B. Argument**

Although Zebarth and Azadegan are both named co-defendants in this case and reached plea agreements with the Government, this fact does not defeat their credibility. Azadegan and Zebarth had direct and prolonged involvement with defendant in numerous real estate deals, including third party assignments and the use of straw buyers. Defendant does not provide any reason to find Zebarth and Azadegan as unreliable witnesses.

The government presented sufficient evidence of a conspiracy; thus, with respect to the substantive counts (counts 1 and 5), the defendant can be found guilty on either an aiding or abetting or a *Pinkerton* conspiracy theory, particularly if there was sufficient evidence, as there was here, to prove the charged conspiracy and to link it to the substantive offenses.[3]

Defendant argues that a new trial is warranted because the government disclosed *Brady* material late as it relates to witness Azadegan. This argument is erroneous because the

---

[3] *Pinkerton* permits a jury to find a defendant guilty of a substantive offense committed by a co-conspirator as long as the offense occurred within the course of the conspiracy, was within the scope of the agreement, and could reasonably be foreseen as a necessary or natural consequence of the agreement. See *Pinkerton v. United States*, 328 U.S. 640, 647-48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Olano*, 62 F.3d 1180, 1199 (9th Cir.1995).

government disclosed recordings of Azadegan consistent with its obligations under the Jenck's Act in a timely fashion. (*See* Jencks Act, 8 U.S.C. § 3500, allows disclosure to be delayed until after the witness has been called by the government.) Moreover, the government reviewed the tapes for exculpatory information and none was found. Defendant's argument is speculative, without any basis and a new trial should not be granted.

With respect to the audio-video excerpts of an undercover meeting between defendant and Agent Amjad Qaqish defendant argues that the video recordings should not have been admitted. The tapes were relevant as they corroborated defendant's relationship with Azadegan, his sophistication in the real estate market and his knowledge of "cash back." They were properly admitted. Again, a new trial should not be granted.

In summary, there was evidence that defendant engaged in third party assignments (cash back). Furthermore, there was evidence that he made the introduction to Samuel and Georgiana Dobos for the express purpose of selling Azadegan's homes. There was evidence that he provided false verification of rents for buyers. This was corroborated by a false verification of rent for the Fallen Leaf property (Count 5) on Bunea's behalf. Lastly, defendant's statements to Zebarth demonstrates that he knew that the houses were going into foreclosure. There is sufficient evidence of defendant's knowledge of the conspiracy and that the use of straw buyers (Bunea and Babeti) was reasonably foreseeable and a natural consequence of the introduction of Azadegan to the Dobos.

## IV. CONCLUSION

A new trial is unwarranted as the evidence does not preponderate sufficiently heavily against the verdict. See *Alston*, 974 F.2d at 1211; *Pimentel*, 654 F.2d at 545. In the final analysis, the review of the evidence shows that the jury could have rationally reached a verdict of guilty with respect to counts 1, 7 and 5 beyond a reasonable doubt. Defendant provides no new evidence in his motion and argues only that video-tape evidence was improperly admitted and

a potential *Brady* violation that is nothing more than mere speculation. On the evidence presented defendant is not entitled to a new trial.

Respectfully submitted this 1st day of December, 2009.

DENNIS K. BURKE
United States Attorney
District of Arizona

s/Kevin M. Rapp

KEVIN M. RAPP
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Tom Crowe